UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

**LEMM CORPORATION-OPERATIONS**,

    Plaintiff,

vs.

No.: _____

**CAPITAL INDUSTRIAL COATINGS, LLC** and
**INTERNATIONAL PAINT LLC**,

    Defendants.

## COMPLAINT

The Plaintiff, Lemm Corporation-Operations, by and through counsel, hereby files this Complaint for compensatory damages against Defendants Capital Industrial Coatings, LLC ("CIC") and International Paint, LLC ("IP") as follows:

### I. INTRODUCTION

1. This is an action arising out of faulty workmanship, defective products, or both. Plaintiff engaged Defendant CIC via a written contract to apply a multi-part coating system manufactured by Defendant IP to an anhydrous ammonia tank in Niota, Illinois. Pursuant to its contract with Plaintiff, Defendant CIC sandblasted the exterior of the tank, applied two coats of epoxy mastic (Interseal 670HS), one coat of Polysiloxane (Interfine 1080), and a fourth coat of Polysiloxane (Interfine 878) to all handrails, toeplates, stairs, and ladders, along with similar work on the chime area of the tank. Shortly after Defendant CIC completed its original work, the coating system manufactured by Defendant IP began to fail. Plaintiff notified Defendant CIC of the failed coating system approximately 90 days after Defendant CIC demobilized from the original work. Defendant CIC and Defendant IP performed a site investigation of the failed coating system, and Defendant

CIC performed repairs pursuant to its warranty. Four months later, Plaintiff notified Defendant CIC of the systemic failure of the coating system. Defendant CIC and Defendant IP again investigated the failed coating system on site and performed testing of samples. Defendants refused to provide Plaintiff with the results of such testing. Both Defendants fail to take responsibility for the failed coating system or to perform repairs to the failed coating system. Plaintiff thus files this cause of action against Defendants for breach of contract, breach of warranty, negligence, and violation of the Tennessee Products Liability Act.

## II.  PARTIES

2. Plaintiff Lemm Corporation-Operations is a Tennessee corporation.

3. Defendant CIC is an Illinois limited liability company, who may be served with process via its registered agent Paul Migawa, 141 E. 141st Street, Hammond, Indiana 46327.

4. Upon information and belief, Defendant CIC is a single member LLC whose member is Capital Industrial Services, LLC, an Illinois limited liability company, which is itself a single member LLC, whose member is Paul Migawa, an adult citizen and resident of Palos Park, Illinois.

5. Defendant IP is a Delaware limited liability company, who may be served with process via its registered agent, Corporation Service Company, 2908 Poston Ave, Nashville, Tennessee 37203.

6. Upon information and belief, Defendant IP is a single member LLC whose member is Akzo Nobel Coatings, Inc., a Delaware corporation.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction of this action pursuant to 42 USC § 1332(a).

8. There is complete diversity of citizenship between the parties. Plaintiff is a Tennessee resident, Defendant CIC is an Illinois resident by virtue of its sub-member, and Defendant IP is a Delaware resident via its member.

9. The amount in controversy exceeds $75,000.00.

10. Venue is proper in this Court. The contract between Plaintiff and Defendant CIC contains a venue clause whereby the parties agreed that the "State of Tennessee's courts or the United States federal district courts in Tennessee have exclusive jurisdiction of all disputes arising out of the Agreement."[1]

## IV. STATEMENT OF FACTS

11. Plaintiff operates a terminal facility on the Mississippi River near Niota, Illinois (the "Niota facility").

12. On or about February 17, 2022, Plaintiff entered a contract (the "Contract") with Defendant CIC to apply a coating system to an anhydrous ammonia (NH3) tank at the Niota facility. A true and correct copy of the Contract is attached hereto as **Exhibit A** and incorporated by reference.

13. Plaintiff issued the Purchase Order to Defendant CIC pursuant to the Contract on March 10, 2022. (*See* Ex. A at 12.)

14. The multi-part coating system applied by Defendant CIC consisted of the following products manufactured by Defendant IP: epoxy mastic (Interseal 670HS), Polysiloxane (Interfine 1080 and Interfine 878), and Polyurethane (Polibrid 705E).

15. Defendant CIC mobilized to begin the project at the Niota facility on June 6, 2022.

16. Defendant CIC sandblasted the tank at the Niota facility and applied the coating system.

17. Defendant IP's products that comprise the coating system must be applied within a strict timeframe to ensure proper adhesion.

18. Defendant CIC demobilized after completing its work on September 2, 2022.

19. Plaintiff paid Defendant CIC $511,298.00 for services rendered pursuant to the Contract.

---

[1] Ex. A at 15, § 29.

20. In the Contract, Defendant CIC agreed to provide Plaintiff with a warranty. It provides, in pertinent part:

> [Defendant CIC] represents and WARRANTS: (1) that the articles herein described are fit for use for the specified purposes for which they are purchased by [Plaintiff] and are free from defect in design, workmanship, and material and are in strict accordance with the specifications hereof, … and [Defendant CIC] agrees to replace without cost any article, material or workmanship which shall be found defective within one (1) year after start-up, or 18 months from shipment, whichever occurs first.

(Ex. A. at 15, § 21.)

21. In the Contract, Defendant CIC agreed to remedy, as soon as possible, defects in materials or workmanship. (Ex. A at 24, § 18.)

22. On December 8, 2022, only three months after Defendant CIC demobilized, Plaintiff notified both Defendants that the coating system was failing due to peeling.

23. Plaintiff notified Defendants of the continued peeling of the coating system, and provided them photographs, on December 9, 2022, February 13, 2023, and March 23, 2023.

24. On April 5, 2023, four months after receiving notice of the failed coating system, both Defendants came to the Niota facility for a site investigation of the failure.

25. Defendant IP issued a field report of their site investigation on May 15, 2023.

26. On August 1, 2023, eight months after receiving notice of the failed coating system, Defendant CIC mobilized at the Niota facility to perform repairs.

27. Defendant CIC demobilized from the Niota facility in September 2023.

28. On January 29, 2024, four months after Defendant CIC demobilized from its repair work, Plaintiff notified Defendant CIC of the coating system failure.

29. Specifically, the coating system failure was characterized by paint peeling at different elevations around the shell of the tank and the tank roof; safety yellow paint peeling from the

4

handrails, toeplates, and stair treads; the Polibrid cracking; and seepage coming from the bottom of the Polibrid on the chime of the tank.

30. Nearly three months later, on March 19, 2024, Defendants met with Plaintiff at the Niota facility to inspect and investigate the coating system.

31. Defendant IP took samples of the coating system for testing.

32. Plaintiff requested from Defendants the results of the testing, but have not received any information from Defendant IP in response.

33. Defendant IP provided Defendant CIC a proposed repair plan for coating system on April 29, 2024, which was provided to Plaintiff on May 29, 2024.

34. The repair plan generally consists of sandblasting the tank and associated areas and reapplying the coating system. The proposed repair plan from Defendants is attached hereto as **Exhibit B**.

35. Without access to the testing information from Defendant IP, Plaintiff cannot sufficiently determine whether the proposed repair plan is appropriate or adequate to repair the coating system. The proposed repair plan does not address the cracks in the chime area of the tank.

36. Even assuming that the proposed repair plan is appropriate and adequate to repair the coating system, Defendant CIC does not agree that the proposed repair plan is their responsibility under the warranty or otherwise.

37. Spiro Poulos, Vice President of Defendant CIC, emailed Plaintiff's representative Mark McGee on May 29, 2024, which stated:

> Mark, I wanted to send out a separate email without [Defendant] IP copied.
> It is Capital's position that this new repair work is <u>not</u> being completed as a warranty repair as it relates to Capital's workmanship. I feel that Capital completed our scope of work professionally and with the highest quality standards and these repairs are because of paint issues.[2]

---

[2] A true and correct copy of this email correspondence is attached as **Exhibit C** (emphasis in original).

38. Defendant CIC thus contends that the failed coating system is the result of a defective product or products manufactured by Defendant IP.

39. Defendant IP has remained silent with respect to Plaintiff's inquiries about the failed coating system at the Niota facility.

40. In July 2023, Mr. Poulos of Defendant CIC communicated to Plaintiff, in writing, that Defendant CIC understood Plaintiff's concerns about peeling with the coating system and assured Plaintiff as follows: "Ultimately neither capital nor IP are walking away if anything does happen in the future."[3]

41. Both Defendants have "walked away" from the failed coating system on the tank at the Niota facility that Defendant CIC applied and Defendant IP manufactured.

## V. COUNT I
*Breach of Contract – Defendant CIC*

42. The Contract is a valid and enforceable contract.

43. Defendant CIC agreed to perform its work "in the best and most workmanlike manner by qualified and efficient works, in strict conformity with the best standard practice." (Ex. A. at 24, § 18.)

44. Plaintiff fully performed under the Contract.

45. Defendant CIC breached the Contract by failing to perform its work in conformity with the Contract.

46. Defendant CIC breached the Contract by failing to remedy defects in its work.

47. Defendant CIC failed to apply the coating system properly in 2022.

---

[3] A true and correct copy of this email correspondence is attached as **Exhibit D** (emphasis in original).

48. Defendant CIC failed to perform warranty repairs properly in 2023.

49. The coating system on the tank at the Niota facility, for which Plaintiff paid more than $500,000.00, remains in a failed or defective condition.

50. Defendant CIC's breach of the Contract has caused Plaintiff damages.

## VI. COUNT II
*Breach of Warranty – Defendant CIC*

51. The Contract contains a valid and enforceable express warranty.

52. Defendant CIC warranted its work for one year.

53. Defendant CIC agreed to remedy defects in its workmanship.

54. Defendant CIC failed to remedy the defects in its workmanship.

55. Defendant CIC failed to respond to Plaintiff timely when notified of the coating system failure in a purported effort to "run out the clock" on the one-year warranty.

56. The coating system on the tank at the Niota facility, for which Plaintiff paid more than $500,000.00, remains in a failed or defective condition.

57. Defendant CIC's breach of warranty has caused Plaintiff damages.

## VII. COUNT III
*Negligence – Defendant CIC*

58. Defendant CIC had a duty to perform its work at the Niota facility in 2022 and 2023 in a workmanlike manner.

59. Defendant CIC had a duty to apply the coating system in a manner such that it would not fail.

60. Defendant CIC had a duty to apply the materials comprising the coating system in accordance with manufacturer specifications.

61. Defendant CIC had a duty to perform its work in accordance with industry standards, including SSPC Standards.

62. Defendant CIC applied the coating system in 2022 and performed repair work in 2023, but did not perform its work at the Niota facility in 2022 and 2023 in a workmanlike manner or in accordance with industry standards or manufacturer specifications.

63. Defendant CIC's failure to perform its work at the Niota facility in 2022 and 2023 in a workmanlike manner or in accordance with industry standards or manufacturer specifications constitutes a breach of duty.

64. The coating system on the tank at the Niota facility, for which Plaintiff paid more than $500,000.00, remains in a failed or defective condition.

65. Defendant CIC's negligence in failing to perform its work in a workmanlike manner has caused Plaintiff damages.

### VIII. COUNT IV
*Violation of Tennessee Products Liability Act – Defendant IP*

66. Defendant IP manufactured the materials comprising the coating system that Defendant CIC applied to the tank at the Niota facility.

67. Defendant IP is a "manufacturer" as defined by Tenn. Code Ann. § 29-28-102(4).

68. Each material comprising the coating system that Defendant CIC applied to the tank at the Niota facility is a "product" as defined by Tenn. Code Ann. § 29-28-102(5).

69. The products comprising the coating system that Defendant CIC applied to the tank at the Niota facility were supposed to be manufactured by Defendant IP in the same lot.

70. Defendant IP did not manufacture the products Defendant CIC applied in the same lot. The products were marred with manufacturing defects.

71. These manufacturing defects were present when Defendant IP placed the products in the stream of commerce.

72. Each material comprising the coating system that Defendant CIC applied to the tank at the Niota facility was in a "defective condition" as defined by Tenn. Code Ann. § 29-28-102(2) at the time it left Defendant IP's control.

73. Defendant IP violated the Tennessee Products Liability Act by defectively manufacturing the products comprising the coating system.

74. Defendant IP's violation of the Tennessee Products Liability Act caused Plaintiff damages.

### **VIII. COUNT V**
*Negligence – Defendant IP*

75. Defendant IP had a duty to manufacture its products in accordance with industry standards.

76. Defendant IP had a duty to manufacture its products in accordance with its own specifications.

77. Defendant IP defectively manufactured the products comprising the coating system.

78. Defendant CIC communicated to Plaintiff that Defendant IP's products had "issues" that caused the coating system to fail.

79. Defendant IP's defective manufacturing of the products comprising the coating system constitutes a breach of duty.

80. Defendant IP's defective manufacturing of the products comprising the coating system caused Plaintiff damages.

**WHEREFORE**, Plaintiff prays that the Court:

1. Award Plaintiff compensatory damages in an amount no less than $1,000,000.00;

2. Award Plaintiff its attorneys' fees and costs allowed by Tennessee law and/or provided for by the Contract;

3. Award Plaintiff all discretionary costs and court costs; and

4. Award Plaintiff all such other and further relief to which it is entitled.

Respectfully submitted:

/s/ Christopher M. Myatt
David Wade (4166)
Christopher M. Myatt (024629)
MARTIN, TATE, MORROW & MARSTON, P.C.
6410 Poplar Avenue, Suite 1000
Memphis, TN  38119-4839
Telephone: (901) 522-9000
Facsimile: (901) 527-3746
cmyatt@martintate.com

*Attorneys for Plaintiff*